1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ZURI S. YOUNG,

11            Plaintiff,                        No. CIV S-03-2644 LKK CMK P

12       vs.

13   G. STRATTON,

14            Defendants.                       FINDINGS & RECOMMENDATIONS

15   _____/

16

17            Plaintiff is a state prisoner, without counsel, prosecuting this civil rights action

18   against defendant Broddrick, defendant Curren, defendant Murphy, defendant Porter, and

19   defendant Terry.  The case is before the undersigned pursuant to Local Rule 302(c) for findings

20   and recommendations on defendants' motion for summary judgment.  Fed. R. Civ. P 56(c).

21

22   **I.       Standard of Review**

23            On a motion for summary judgment pursuant to Rule 56(c), the court must

24   accept the evidence of the non-moving party as true and draw all reasonable inferences of fact in

25   favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

26   The moving party bears the burden of demonstrating that there exists no genuine issue as to any

1 material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex

2 Corp v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P 56(c)).  If the moving party

3 meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue

4 as to any material fact does actually exist.  See Matsushita Elec. Indus. Co. V. Zenith Radio

5 Corp., 475 U.S. 574, 586 (1986).  The party opposing summary judgment may not rest on

6 conclusory allegations, but must set forth specific facts showing that there is a genuine issue of

7 material fact.  See Mosher v. Saalfeld, 589 F.2d 438, 422 (9th Cir. 1978)(involving a pro se

8 litigant); see also Anderson, 477 U.S. at 586 n. 11.  When the record taken as a whole could not

9 lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material

10 fact for trial.  See Matsushita, 475 U.S. at 587.

11        On May 24, 2004, the court advised plaintiff of the requirements for opposing a

12 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

13 F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

14

15 **II.     Background**

16        The crux of plaintiff's claim is that defendants failed to protect him from harm in

17 violation of the Eighth Amendment and retaliated against him in violation of the First

18 Amendment.  Plaintiff also asserts that defendants conspired against him.

19        Taken in a light most favorable to plaintiff, the facts are as follows.  Plaintiff is an

20 inmate at California State Prison-Sacramento (CSP-S).  Plaintiff has been diagnosed with

21 psychiatric disorders and was attacked by other inmates while incarcerated in the Los Angeles

22 County jail.  The attack caused plaintiff to have reoccurring nightmares of violence and

23 flashbacks; this made it impossible for him to share a cell with another inmate.  Plaintiff warned

24 CSP-S staff about his inability to be double-celled.

25        Despite plaintiff's warnings, he was kept on double-cell status.  This was because

26 he did not have a history of being a sexual predator or assaulting cell mates.  Plaintiff disagreed

1  with the decision to keep him on double cell status.  Plaintiff states that after filing complaints

2  regarding his double cell status, defendant Porter retaliated against him by housing him with an

3  HIV positive inmate.  Plaintiff alleges that defendant Porter was further motivated to retaliate

4  against plaintiff because she knew that plaintiff had won a prior lawsuit against her brother-in-

5  law.

6           In October 2003, plaintiff was moved into a cell with inmate Hodge.  Plaintiff

7  continued to request a single cell assignment because he and Hodge did not get along.   On

8  October 11, 2003, plaintiff and Hodge got into an altercation.  Plaintiff states that his injuries

9  were downplayed by prison staff, and plaintiff was charged with a mutual combat violation.

10 Plaintiff avers that defendants "staged the fight" that he had with inmate Hodge.  Plaintiff states

11 that defendant Curren failed to protect his safety by not filing paperwork to ensure that plaintiff

12 be single celled. Plaintiff states that defendants Terry, Murphy, and Broddrick were aware of the

13 complaint that he submitted regarding possible violence between himself and Hodge, but

14 disregarded the risk.

15

16 **III.    Discussion**

17           Defendants assert that they are entitled to summary judgment on plaintiff's

18 deliberate indifference, retaliation, and conspiracy claims.  They further contend that they are

19 shielded from liability by the doctrine of qualified immunity.

20           1.      Failure to Protect

21           Plaintiff claims that, by forcing him to have a cell mate, defendants were

22 deliberately indifferent to a serious threat to plaintiff's safety.

23           Prison officials have a duty to take reasonable steps to ensure the safety of prison

24 inmates.  See Farmer v. Brennan, 511 U.S. 825, 833 (1984).  A prisoner may establish a claim

25 under the Eighth and Fourteenth Amendments against prison officials when the officials acted

26 with "deliberate indifference" to the threat of serious harm or injury by another prisoner.  See

1 Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982).  To show deliberate indifference, a

2 plaintiff must show that prison officials knew of and disregarded an excessive risk to inmate

3 safety.  See Farmer, 511 U.S. at 837.  This standard does not require that a prison guard or official

4 know that with a "moral certainty" that an inmate is in danger of violence before the guard is

5 obligated to take steps to prevent an assault.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.

6 1981).  However, the prison guard must have more than a mere suspicion that violence will occur.

7 See id.

8         Plaintiff's complaint asserts that defendants had reason to know that he was in

9 danger of violence because he had warned staff of "[his] incompatibility to being housed in a

10 double-cell and had advised the CDC employees for safety and security reasons why they should

11 not force him to cell-up with other inmates."  (Am. Compl. 5.)  Plaintiff avers that he had

12 specifically informed staff that he had a problem being celled with inmate Hodge prior to the

13 October 11, 2003 mutual combat.  (Id.)  Specifically, plaintiff states in his complaint that he had

14 filed an appeal and a cell move slip stating that he and Hodge did not get along. (Id.)  Plaintiff

15 states that he informed defendant Terry that he wanted to see the lieutenant or have a cell move

16 right away.  (Id.)  Plaintiff also claims that officers "set-up staged cell fights amongst rival

17 prisoners...."  (Id. 4.)

18         In their motion for summary judgment, defendants argue that plaintiff cannot

19 establish that defendants had reason to know that plaintiff was in danger of violence from a cell

20 mate.  Defendants offer evidence that since entering the California Department of Corrections and

21 Rehabilitation System eleven years ago, plaintiff has consistently been cleared for double celling.

22 (Defs.' Mot. Summ. J., Ex. Y.)  Between March 2001 and March 2005, plaintiff was housed with

23 thirty-nine different inmates with only one incident of violence—the incident with inmate Hodge.

24 (Id.)  In a sworn statement, inmate Hodge relates that he and plaintiff are related and personally

25 knew each other; they lived together for two months prior to the October 11, 2003 incident.  (Id.

26 at Ex. X.)  Hodge states that, two weeks prior to October 11, 2003, plaintiff requested a

4

1 convenience cell change–plaintiff asked  to be placed in a single cell, not to be moved to another

2 double cell to get away from Hodge. (Id.)  Plaintiff had prepared an appeal seeking a convenience

3 cell change prior to October 11, 2003 but had never filed it.  (Id.)  Plaintiff never told Hodge that

4 he felt threatened by him; plaintiff did say something to the effect that he and Hodge did not get

5 along.  (Id.)

6          Defendants Broddrick, Terry, and Murphy state that they had no knowledge that

7 plaintiff felt threatened by being housed with inmate Hodge.  (Defs.' Mot. Summ. J., Exs. R, T, &

8 S.)  Each of the defendants aver that plaintiff never made any statements to them concerning a

9 threat of violence from inmate Hodge.  (Id.)  The record shows that the grievance that plaintiff

10 has attached to his amended complaint, which was filed on October 12, 2003,  makes no mention

11 of any threat of violence to plaintiff. (Id. at Ex. R, Attach. A; see also, Am. Compl., Ex. A.)

12 Further, the record shows that after the October 11, 2003 incident, plaintiff continued to make

13 threats of violence if he was housed with another inmate. (Id. at Ex. Q.)  However, these threats

14 were determined to be "generic" because plaintiff was making them just because he did not want

15 a cell mate and not because he was under any threat of harm.  (Id.)

16          Defendant Curren offers evidence that plaintiff's mental condition did not require

17 single cell status.  (Defs.' Mot. Summ. J., Ex. V.)  Plaintiff's treatment with Dr. Curren did not

18 concern plaintiff's request for single cell status.  (Id.)  The evidence shows that plaintiff never

19 mentioned needing a single cell or being threatened by a cell mate to Dr. Curren.  (Id.)

20          In his reply to defendants' motion for summary judgment, plaintiff states that

21 "defendants [sic] statements are not true or correct."  (Pl.'s Opp. and Obj. to Def.'s Statement of

22 Undisputed Facts at 1.)   He includes a "statement of undisputed facts," which consists of

23 allegations that the Department of Corrections and Rehabilitation have filled his central file with

24 lies.  (Id. at 2.)  Plaintiff states that defendants Broddrick, Murphy, and Terry admit that they

25 knew of the procedures for moving inmates and knew that plaintiff filed an appeal prior to

26 October 11, 2003; however, plaintiff does not assert that this appeal stated that plaintiff felt he

1  was in danger, and that defendants failed to move plaintiff.  Plaintiff fails to set forth any facts to

2  support his assertion that defendants staged fights between inmates.  (Id.)

3          The court finds that plaintiff has not demonstrated that there exists a genuine issue

4  of material fact as to whether defendants Broddrick, Terry, Murphy, and Curren acted with

5  deliberate indifference to a serious theat of harm to plaintiff. See Matsushita, 475 U.S. at 586

6  (noting that once defendants have met their initial burden of informing the court for the basis of

7  their motion and identifying those portions of the record which they believe demonstrate an

8  absence of material fact, the burden shifts to plaintiff to establish a genuine issue as to any

9  material fact that actually does exist).  Plaintiff has not demonstrated that he ever indicated to any

10  of the defendants that he felt that he was under threat of harm from his cell mate.  Instead, the

11  evidence shows that plaintiff made several attempts to be moved into a single cell situation;

12  however, a desire to move into a single cell situation would not put defendants on notice of any

13  threat of harm to plaintiff.  Plaintiff has not established that defendants had any reason to suspect

14  that he was in danger of violence from his cell mate, inmate Hodge. Accordingly, the court

15  recommends that defendants' motion for summary judgment on plaintiff's Eighth Amendment

16  claim be granted.

17          2.      Retaliation and Conspiracy

18          Plaintiff appears to claim that defendant Porter placed him with an HIV positive

19  cell mate in retaliation for plaintiff's "previous lawsuit victories against the L.A. Sheriffs and

20  CDC prison guards at Chino and Folsom." (Am. Compl. at 9.)   Plaintiff also makes vague

21  assertions of defendants conspiring against him.  For example, plaintiff asserts that "..even the

22  administration, who I never see, and are "unknown defendants" [sic] make plots and give the

23  CDC foot soldiers 'Orders' to carry out hidden acts of retaliation." (Id.)

24          Within the prison context, a viable claim of retaliation entails five basic elements:

25  "(1) an assertion that a state actor took some adverse action against an inmate(2) because of (3)

26  that prisoner's protected conduct and that such action (4) chilled plaintiff's First Amendment

1 rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v.

2 Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  The court must afford appropriate deference to

3 prison officials in the evaluation of the proffered legitimate correctional reasons for conduct

4 alleged to be retaliatory.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  The burden

5 rests on plaintiff to demonstrate that there were no legitimate correctional purposes motivating the

6 actions of which he complains.  See id. at 808.

7 　　　　State actors, acting in concert to deprive an individual of constitutional rights, may

8 be held liable for conspiracy under § 1983.  See Hoffman v. Halden, 268 F.2d 280, 293 (9th Cir.

9 1959) rev'd on other grounds, 300 F.2d 24, 30 (9th Cir. 1962).  To be successful on a conspiracy

10 claim, a plaintiff must show that defendants conspired, or acted jointly or in concert and that some

11 overt act was done in furtherance of the conspiracy.  See id. at 292-294.

12 　　　　It is undisputed that filing lawsuits is protected conduct.  See Schroeder v.

13 McDonald, 55 F.3d 454, 461 (9th Cir. 1995) (stating that filing lawsuits is a First Amendment

14 right of fundamental importance to prisoners).  Thus, the question for the court is whether there is

15 a genuine factual dispute about whether defendant Porter[1] housed plaintiff with an HIV positive

16 cell mate in retaliation for filing lawsuits.  Defendants have put forth evidence showing that

17 defendant Porter was unaware that plaintiff had filed previous lawsuits and that she was not, as

18 plaintiff stated, related to the defendant in one of plaintiff's previous lawsuits.  (Defs.' Mot. For

19 Summ. J. at Ex. U.)  Defendants have put forth evidence showing that defendant Porter was

20 unaware of the HIV status of any inmates.  (Id.)   Beyond the vague allegations in his complaint,

21 plaintiff has not put forth any evidence which would establish an issue of fact as to this issue. See

22 Matsushita, 475 U.S. at 586.  Additionally, plaintiff has put forth no evidence which would

23 indicate that defendant Porter had anything to do with the making decision about with whom

24 plaintiff should be celled.  Accordingly, the court finds that plaintiff has failed to set establish the

25 _____

26 　[1]Defendant Porter is the only defendant against whom plaintiff makes specific retaliation claims.  He makes several vague retaliation claims about other named and unnamed defendants.

1  elements of a retaliation claim and recommends that summary judgment be granted on this claim.

2         Beyond making vague assertions in his amended complaint, plaintiff does not set

3  forth any facts which would show that defendants conspired against him.  These vague allegations

4  are not sufficient to set forth a disputed issue of material fact on this claim.  See Matsushita, 475

5  U.S. at 586.  Accordingly, the court recommends that summary judgment be granted on this

6  claim.

7         3.     Qualified Immunity

8         Defendants contend that they are entitled to qualified immunity from plaintiff's §

9  1983 claims.  The first step in a qualified immunity analysis "is to consider the materials

10  submitted in support of, and in opposition to, summary judgment in order to decide whether a

11  constitutional right would be violated if all facts are viewed in favor of plaintiff."  Jeffers v.

12  Gomez, 267 F.3d 895, 909 (9th Cir. 2001).  If no constitutional right would have been violated

13  were the allegations established, there is no necessity for further inquiries concerning qualified

14  immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).

15         As discussed above, the court finds that, even when viewing the facts in a light

16  most favorable to plaintiff, no constitutional rights have been violated.  Accordingly, defendants

17  are entitled to qualified immunity on plaintiff's claims that his First and Eighth Amendment rights

18  were violated.

19

20  **IV.**    **Conclusion**

21         Based on the foregoing, IT IS RECOMMENDED that defendants' motion for

22  summary judgment be granted in its entirety and plaintiff's complaint dismissed with prejudice.

23         These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25  days after being served with these findings and recommendations, plaintiff may file written

26  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

1  Findings and Recommendations." Plaintiff is advised that failure to file objections within the

2  specified time may waive the right to appeal the District Court's order. See  Martinez v. Ylst, 951

3  F.2d 1153 (9th Cir. 1991).

4

5  DATED:   July 7, 2006.

6

7  _____
   **CRAIG M. KELLISON**
   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26